# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-1414

_____

Angela Schuncey Richardson

*Plaintiff - Appellant,*

v.

Krystle Reed Duncan, Corporal

*Defendant - Appellee.*

------------------------------

Attorney General of Arkansas

*Amicus Curiae*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: August 30, 2024
Filed: September 20, 2024

_____

Before COLLOTON, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

COLLOTON, Chief Judge.

Angela Richardson, an Arkansas inmate, sued Krystle Reed Duncan, a former prison security officer, alleging sexual misconduct in violation of the Eighth Amendment. Duncan defaulted, but the district court[*] concluded that Richardson failed to state a claim because she alleged only consensual sexual encounters with Duncan. Applying our circuit precedent of *Freitas v. Ault*, 109 F.3d 1335 (8th Cir. 1997), to the record in this case, we affirm.

I.

Richardson sued Duncan under 42 U.S.C. § 1983, alleging sexual harassment and sexual assault in violation of the Eighth Amendment. The allegations in Richardson's complaint set forth the following narrative. Richardson was imprisoned at the McPherson Unit of the Arkansas Department of Correction. Duncan was a prison security officer at the unit through January 2019. Between November 2018 and January 2019, Richardson and Duncan developed a relationship. Richardson trusted Duncan and confided in her. Eventually, the relationship included sexual contact: the couple kissed, and Richardson digitally penetrated Duncan's vagina. This behavior allegedly continued for months; Duncan contacted Richardson by e-mail and regular mail, and occasionally deposited money into her account at the prison. Richardson spent extra time with Duncan in the medical facilities where Duncan was stationed. Richardson participated in the relationship because she felt safe with Duncan. As Richardson had reported a prior sexual assault and says that she experienced retaliation, she did not tell anyone but a family member about her relationship with Duncan. Richardson allegedly suffered emotional distress when she

---

[*]The Honorable Lee P. Rudofsky, United States District Judge for the Eastern District of Arkansas, adopting the report and recommendations of the Honorable Edie R. Ervin, United States Magistrate Judge for the Eastern District of Arkansas.

found out later that Duncan had been "carrying on with other inmates in the past before their release."

Duncan was fired in January 2019, but she and Richardson corresponded by letter thereafter. Richardson suffered emotional distress after learning that Duncan had been sexually involved with other inmates. Richardson allegedly felt that she was "just another victim." In late 2020, Richardson told prison officials about her sexual contact with Duncan, and this litigation followed.

Duncan never answered Richardson's complaint or otherwise participated in this litigation. The clerk of court entered Duncan's default, *see* Fed. R. Civ. P. 55(a), and a magistrate judge then held a hearing under Federal Rule of Civil Procedure 55(b)(2). That rule authorizes the court to "establish the truth of any allegation by evidence" and to "determine the amount of damages."

After the hearing, the magistrate judge recommended vacating the clerk's entry of default and dismissing Richardson's complaint without prejudice for failure to state a claim upon which relief can be granted. *See* 42 U.S.C. § 1997e(c)(1); 28 U.S.C. § 1915(e)(2)(B)(ii). The magistrate judge concluded that Richardson's complaint asserted only consensual sexual activity with Duncan: Richardson did not allege facts to support a belief the Duncan "would have used her position to harm" Richardson if she had declined a sexual relationship, and Richardson did "not allege that she communicated to [Duncan], by conduct or words, that she was not a willing participant in their relationship." On that basis, the judge recommended that the complaint did not adequately allege either the objective or subjective component of a claim under the Eighth Amendment. The magistrate judge recommended alternatively that if the district court found that a default judgment should be granted, then it should award only nominal damages, such as one dollar. The district court adopted the recommendation to dismiss the complaint for failure to state a claim.

-3-

Richardson appeals. Because Duncan did not appear, this court invited the Attorney General of Arkansas to submit a brief *amicus curiae* regarding the issues in the appeal. We review the district court's decision *de novo*. *Rinehart v. Weitzell*, 964 F.3d 684, 687 (8th Cir. 2020).

## II.

Richardson argues on appeal that she stated a claim under § 1983 and the Eighth Amendment. As a general matter, once a prisoner is incarcerated, "only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation omitted). A prisoner alleging a violation must satisfy both an objective and a subjective element. The objective inquiry asks whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)).

When assessing whether alleged wrongdoing was objectively "harmful enough," we analyze the general requirement of "infliction of pain" with "due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Id.* (quoting *Whitley*, 475 U.S. at 320). For example, "routine discomfort" is generally insufficient to state a conditions-of-confinement claim, *id.* at 9, and *de minimis* uses of force that cause "no discernible injury" are almost never excessive. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (internal quotation omitted).

In *Freitas v. Ault*, this court addressed alleged sexual abuse by a prison official against an inmate. Sexual activity between a correctional officer and an inmate is improper and serves no legitimate penological purpose. In Arkansas, it is a felony for a corrections officer to engage in sexual contact with a prisoner. Ark. Code § 5-14-127(a)(2). With respect to the objective component of a constitutional claim,

however, *Freitas* held that "welcome and voluntary sexual interactions, no matter how inappropriate, cannot as matter of law constitute 'pain' as contemplated by the Eighth Amendment." 109 F.3d at 1339. *Freitas* aligns with the observation of the Tenth Circuit in a similar case that "not all misbehavior by public officials, even egregious misbehavior, violates the Constitution." *Graham v. Sheriff of Logan Cnty.*, 741 F.3d 1118, 1125 (10th Cir. 2013).

Richardson contends that the Supreme Court's decision in *Wilkins* undermines *Freitas*. *Freitas* and *Wilkins*, however, involved different types of claims under the Eighth Amendment. *Freitas* addressed the significance of a prisoner's consent in the context of a claim of alleged sexual harassment or abuse by a prison official. Although physical or psychological harm resulting from sexual abuse can satisfy the objective component of an Eighth Amendment claim, *Freitas* concluded that where a prisoner consents to sexual encounters, there is no infliction of "pain" as contemplated by the Eighth Amendment. *Id.* Therefore, the prisoner in that case could not satisfy the objective component of a claim alleging cruel and unusual punishment.

*Wilkins*, by contrast, reaffirmed the holding of *Hudson* that a claim of excessive force does not fail simply because a prisoner suffers only *de minimis* injury. 559 U.S. at 38-39. The proper inquiry for that type of claim focuses on the force used by a prison official. A prisoner may suffer "pain" as contemplated by the Eighth Amendment if a prison official applies excessive force, even if the prisoner's physical injury is not serious. *Id.* at 37-38.

*Freitas* did not analyze an alleged use of excessive force. The decision did not reject the prisoner's claim based on a requirement of more than *de minimis* injury. The court concluded, rather, that a prisoner who engages in a consensual sexual encounter suffers no "pain" or harm at all under the Eighth Amendment. 109 F.3d at 1339. *Freitas* cited the Supreme Court's decision in *Hudson* on excessive force,

but nonetheless held that no constitutional violation occurred in a case of consensual sexual activity. *Wilkins* and its reaffirmance of *Hudson* thus did not abrogate our circuit precedent in *Freitas*.

Richardson argues that even accepting the rule in *Freitas*, her complaint alleged nonconsensual sexual abuse that violated the Eighth Amendment. Before entering a default judgment, a court must "ensure that 'the unchallenged facts constitute a legitimate cause of action.'" *Marshall v. Baggett*, 616 F.3d 849, 852-53 (8th Cir. 2010) (internal quotation omitted). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam). In a lawsuit by a prisoner, moreover, the district court shall on its own motion dismiss an action that fails to state a claim. 42 U.S.C. § 1997e(c)(1). To state a claim in light of *Freitas*, Richardson must allege facts that are sufficient to make out a plausible claim of sexual abuse or harassment that was not consensual. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007).

We conclude that Richardson failed to state a claim in her complaint because she did not allege that her sexual contact with Duncan was not consensual. Richardson alleged that she confided in Duncan, and that her feelings for Duncan led to sexual activity. Richardson asserted that she told only a family member about the encounters, and that she allegedly faced retaliation after reporting a past sexual assault. But Richardson did not allege that Duncan used force, intimidation, or threats of retaliation to procure sexual activity. Richardson alleged that she "went along with the relationship due to her weakness and feeling safe with Officer [Duncan]," but did not assert that Duncan protected her from unsafe conditions elsewhere in the prison in exchange for sex. Richardson did allege that Duncan placed money in her prison account at times, but did not allege that Duncan traded money for sex or that any gifts or privileges influenced her participation in the sexual encounters. *See Graham*, 741 F.3d at 1124.

As the district court recognized, any relationship between a corrections officer and an inmate is fraught with potential for coercion due to the imbalance of power. Any inmate might subjectively fear potential retaliation from a prison official. But *Freitas* accepted that sexual interactions nonetheless could be "welcome and voluntary," and thus rejected a *per se* rule that prisoners are incapable of voluntary consent. 103 F.3d at 1339. To state a plausible constitutional claim, therefore, a prisoner who recounts sexual contact that is outwardly consensual must allege at least some manifestation of resistance by the prisoner or some act of coercion by the corrections official. Richardson's complaint makes no such allegation, so it is insufficient to state a claim. *Cf. Hale v. Boyle County*, 18 F.4th 845, 855 (6th Cir. 2021) (per curiam) (inmate asserted that court security officer provided "privileges and favors in exchange for sex"); *Rafferty v. Trumbull County*, 915 F.3d 1087, 1096 (6th Cir. 2019) (inmate alleged that she complied with sexual advances because corrections officer "intimidated" her); *Wood v. Beauclair*, 692 F.3d 1041, 1048 (9th Cir. 2012) ("Wood's statements and conduct demonstrate objective manifestations of his unwillingness to engage in any type of sexual act.").

Richardson also relies on statements that she made in the evidentiary hearing convened by the magistrate judge under Rule 55(b). We have not addressed whether a plaintiff may use such a hearing to supplement the allegations of her complaint. The rule provides that the court may conduct a hearing to "establish the truth of any allegation by evidence"—that is, any allegation in the plaintiff's complaint—but does not refer to adding new allegations that would effectively amend the complaint. Allowing a plaintiff to amend a complaint by way of a hearing under Rule 55(b) would raise concerns about notice and procedural fairness to a defaulting defendant. *See Wooten v. McDonald Transit Assocs., Inc.*, 775 F.3d 689, 699-703 (5th Cir.), *withdrawn and superseded on reh'g*, 788 F.3d 490 (5th Cir. 2015).

We need not resolve here whether a court considering a motion for default judgment must limit its consideration to the plaintiff's complaint. Even if we

consider Richardson's testimony at the evidentiary hearing, we conclude that it is insufficient to state a claim upon which relief can be granted.

At the hearing, Richardson paraphrased the allegations in her complaint and provided new details of her relationship with Duncan. She explained that she felt safe with Duncan, confided in Duncan, and developed positive feelings for her. These feelings led to the sexual encounters. Richardson testified that she sometimes did not like the way the sexual activity made her feel, but she went along with it, and Duncan did not force her to participate. Richardson testified that after the first sexual encounter, she "felt like" she was "trapped" and "had to do it" because Duncan "knew so much" about her past negative experiences with other prison officials. But Richardson did not allege that she communicated her reservations or expressed any reluctance or resistance to Duncan. She testified that she sometimes felt like she "wasn't even in prison" when she was around Duncan, and felt "so safe around her." She believed that Duncan was "in [her] corner" and seemed like a "super hero." Richardson stated that Duncan initiated the sexual encounters, but did not allege that Duncan took any coercive action or made any threat of retaliation. Therefore, even considering the hearing testimony for the sake of analysis, we conclude that Richardson failed to state a claim under the Eighth Amendment.

The judgment of the district court is affirmed.

MELLOY, Circuit Judge, dissenting.

I respectfully dissent. I would remand for either the reinstatement of the default judgment or the opportunity for the plaintiff to have a counseled hearing to address the issue of whether she truly entered into a consensual sexual relationship with the defendant.

-8-

As a preliminary matter it is important to note that the record before us is fairly sparse. It consists of the plaintiff's pro se, handwritten complaint which the majority notes must be accepted as true for purposes of the default judgment. The complaint is supplemented by the hearing conducted by the magistrate judge at which the plaintiff was not represented and neither the defendant nor the State of Arkansas participated. At a minimum, I would remand to allow the plaintiff to have a counseled hearing at which she could more fully explain the allegations of her complaint in which she does allege that she was the victim of sexual harassment and sexual assault.

Turning to the merits, I agree with the majority that *Wilkins v. Gaddy*, 559 U.S. 34 (2010), does not call into question our court's holding in *Freitas v. Ault*, 109 F.3d 1335 (8th Cir. 1997). However, I believe that even under the holding of *Freitas*, the plaintiff has made sufficient allegations to warrant reinstatement of the default judgment in this case. It is true that *Freitas* discussed whether the sexual relationship in that case constituted the infliction of "pain." However, *Freitas* then went on to discuss whether the relationship in that case was truly voluntary. The court specifically noted, "The record contains no evidence . . . supporting his claim that he succumbed to Ms. Howard's advances because she was his boss and he feared the possible negative consequences of reporting her actions." *Freitas*, at 109 F.3d 1339.

In this case, however, I believe there are at least three factors which mitigate against finding a truly voluntary sexual relationship.

First, the plaintiff alleges in her complaint that the defendant put money into her prison account. The magistrate judge made reference to that allegation at the evidentiary hearing but did not develop the record as to the amount or frequency of deposits. Similarly, the hearing did not explore any representations or threats that might have accompanied the deposit of funds. I find it very difficult to conclude a

sexual relationship is truly voluntary in a prison setting when a prison guard pays money for sex.

Second, *Freitas* specifically mentioned there was no credible allegation that Freitas was reluctant to report the relationship with the prison guard. 109 F.3d at 1336. In contrast, in the present case, the plaintiff specifically alleged in her complaint and developed at the evidentiary hearing her reluctance to report the relationship. She said she did tell other family members but was fearful of reporting the relationship to prison authorities because of a fear of retaliation. She alleged and testified that she had previously reported a sexual relationship with a guard and felt that she had been the victim of retaliation as a result. Taking the allegations in the complaint as true, as we must in the context of a default judgment, the plaintiff made a credible allegation that she was reluctant to report the relationship.

Finally, the plaintiff alleges that the defendant made her feel safe. The allegations and testimony indicate that the defendant made references to the fact that she would "protect" the plaintiff. Plaintiff testified in support of her allegation that the defendant told her the staff was out to get her and the defendant would protect her. Specifically, the defendant would allow the plaintiff to come to the prison infirmary early in the evening and spend the entire night in the infirmary, away from other prisoners and prison staff. The clear implication being that if the relationship terminated, the plaintiff would no longer have the benefit of the defendant's protection.

Taking these factors together, I believe that there is more than sufficient evidence in the allegations of the complaint and the evidentiary record to find the relationship was not truly voluntary and to support the entry of a default judgment.

_____

-10-